ROBBINS GELLER RUDMAN
& DOWD LLP
ERIC I. NIEHAUS (239023)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
ericn@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
STUART A. DAVIDSON (*pro hac vice* forthcoming)
MICHAL-ANE E. MCINTOSH (*pro hac vice* forthcoming)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: 561/750-3000
sdavidson@rgrdlaw.com
mmcintosh@rgrdlaw.com

Attorneys for Plaintiff and the Class

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| AUSTIN O'CONNOR, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>LOWE'S COMPANIES, INC.,<br><br>Defendant. | Case No. ___________<br><br>CLASS ACTION COMPLAINT FOR:<br>(1) Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200 et seq.;<br>(2) Violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §75-1.1 et seq.;<br>(3) Unjust Enrichment or Quasi-Contract Claims for Restitution and Disgorgement; and<br>(4) Money Had and Received.<br><br>JURY TRIAL DEMANDED |

Plaintiff Austin O'Connor ("Plaintiff"), on behalf of himself and all others similarly situated, by and through the undersigned counsel, brings this class action against Defendant Lowe's Companies, Inc. ("Lowe's," the "Company," or "Defendant"), based on Plaintiff's personal knowledge, counsel's investigations, and upon information and belief as to all other matters, and alleges:

## I. INTRODUCTION

1. Plaintiff brings this action as a purchaser of goods sold and shipped throughout the United States, who bore the economic burden of the tariffs imposed by President Donald Trump's ("Trump") administration under the International Emergency Economic Powers Act, 50 U.S.C. §1701 et seq. ("IEEPA"), and against Lowe's, which shifted the economic burden of the IEEPA tariffs to consumers throughout the United States by means of price increases on imported goods as well as U.S.-sourced goods not subject to tariffs sold and shipped by Lowe's to Plaintiff. As the importer-of-record ("IOR") on goods sold at Lowe's stores or online at Lowes.com, Lowe's now receives—or has the unilateral right to receive—an inequitable windfall by collecting refunds from the federal government for tariff costs that were shifted to and paid by Plaintiff, who purchased goods from and sold by Lowe's, and therefore, is the real party in interest to receive IEEPA tariff refunds.

2. Lowe's collected hundreds of millions of dollars in unlawful tariffs costs from consumers by raising prices on imported goods and U.S.-sourced goods while the Trump administration's IEEPA tariffs were in effect.

3. The tariff refund process, set in place by the federal government after the United States Supreme Court struck down the IEEPA tariffs, permits only the IOR to apply for and receive a refund for any moneys paid for the import of goods. However, Lowe's, as the IOR, shifted the cost of these tariffs to its customers by way of price increases on products both subject to tariffs and not subjected to tariffs. Thus, it is Plaintiff and similarly situated consumers who ultimately bore the tariff costs.

4. Lowe's has not returned any portion of those costs it passed to consumers, and it has no intention of doing so. To the contrary, Lowe's has already recognized approximately $80

million in IEEPA tariff refunds in its own earnings.[1] It has, in short, generated and retained a windfall from unlawful government action, and consumers—not Lowe's—are the ones left paying for it.

5. This dispute arises from a fundamental inequity in the tariff refund process. Only the IOR may seek a refund for an unlawfully assessed tariff—but IORs merely advance the tariff cost at the border and recoup all or a substantial part of it through higher consumer prices. In economic reality, the consumer paid the illegal tariff.

6. This inequity is compounded when, as here, a tariff is struck down by the courts. Consumers, who bore the true economic burden, have no direct avenue for redress—they lack both a statutory cause of action in the Court of International Trade ("CIT") and standing to seek a refund. That right belongs exclusively to the IOR, here Lowe's, regardless of who actually paid. As designed, the refund process establishes that large corporations that passed the tariff cost onto their customers remain exclusively entitled to recover a full refund of tariffs the Supreme Court has since declared unlawful.

7. This lawsuit seeks to force Lowe's to return funds collected from millions of consumers to cover IEEPA tariffs between February 2025 and February 2026. Lowe's has made no commitment to compensate consumers for those payments. Lowe's, which will not reimburse consumers for the portion of the unlawful tariff that was forced upon them by means of across-the-board price increases, will be unfairly enriched at the expense of consumers.

8. Plaintiff seeks a judgment that requires Lowe's to return to Plaintiff, and others similarly situated, all IEEPA duties passed on to customers in the form of higher prices on products sold at Lowe's stores or on Lowes.com, with interest.

9. Plaintiff also seeks restitution and disgorgement of the tariff-related overcharges he, and others similarly situated, paid, or a proportionate share of any tariff refund Lowe's recovers, together with interest, reasonable attorneys' fees, and costs.

---

[1] Lowe's Cos., Inc., Quarterly Report (Form 10-Q) for the quarter ended July 31, 2026 (filed Aug. 27, 2026), Note 1 (Summary of Significant Accounting Policies – Tariffs) ("Q2 2026 Form 10-Q"), https://www.sec.gov/Archives/edgar/data/60667/000006066726000117/R9.htm.

## II. JURISDICTION AND VENUE

10. This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d), because the proposed Class (defined below) consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

11. This Court has personal jurisdiction over Lowe's because Lowe's purposefully directs its business at California, operates 112 Lowe's-branded home improvement stores in California,[2] and sold the products at issue to Plaintiff and Class members in California. Plaintiff's claims arise out of and relate to those California contacts.

12. Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events, omissions, and misrepresentations giving rise to Plaintiff's claims occurred in this District. Lowe's has marketed, advertised, made available for sale, and shipped products subject to IEEPA tariffs within this District.

## III. PARTIES

### A. Plaintiff

13. Plaintiff Austin O'Connor is a citizen and resident of Brooklyn, New York. During the Class Period (February 4, 2025 through February 20, 2026, inclusive), Plaintiff purchased goods directly from Lowe's at its retail store located at 401 Columbus Parkway, Vallejo, California 94591. Some or all of these products were imported from countries subject to IEEPA tariffs and sold at prices inflated by Lowe's pass-through of IEEPA tariff costs. Plaintiff also purchased other products that were sourced from within the United States and, while not subject to tariffs, were sold at inflated prices due to Lowe's spreading the IEEPA tariff across its product line, so that purchases of non-tariffed domestic goods also bore the tariff burden.

---

[2] Lowe's Cos., Inc., Annual Report (Form 10-K) for the fiscal year ended January 30, 2026 (filed Mar. 23, 2026) ("2025 Form 10-K"), https://www.sec.gov/Archives/edgar/data/60667/000006066726000029/low-20260130.htm, at 19 (Item 2 – Properties).

### B. Defendant

14. Defendant Lowe's Companies, Inc. is an American retail company specializing in home improvement that conducts business in all 50 states. Lowe's is a North Carolina corporation with principal executive offices located at 1000 Lowes Blvd., Mooresville, North Carolina, 28117. At all relevant times, Lowe's operated brick-and-mortar stores and an online marketplace through which it sold imported products and U.S.-sourced products directly to consumers, including in California and in this District. During the Class Period, Lowe's collected tariff costs from those consumers on goods subject to tariffs imposed under the IEEPA as well as goods not subject to tariffs imposed under the IEEPA. On information and belief, the misconduct alleged herein originated from, and was directed out of, Lowe's' headquarters and principal place of business in Mooresville, North Carolina.

## IV. FACTUAL ALLEGATIONS

### A. Lowe's Is an Enormous Retailer of Imported Goods and U.S.-Sourced Goods

15. Lowe's is a major retailer that imports a substantial volume of consumer goods into the United States and sells them to consumers throughout the country through both its physical locations and its online store.

16. Lowe's was ranked No. 52 on the 2026 Fortune 500 list of the largest American corporations by total revenue. As of 2025, it operates more than 1,700 stores throughout the United States.

17. Lowe's offers "a complete line of products for construction, maintenance, repair, remodeling, and decorating," across categories including Appliances, Seasonal & Outdoor Living, Lumber, Lawn & Garden, Hardware, Kitchens & Bath, Building Materials, Rough Plumbing, Paint, Millwork, Tools, Electrical, Flooring, and Décor.[3] A typical Lowe's-branded home improvement store stocks approximately 37,000 items, with additional items available online.[4]

---

[3] 2025 Form 10-K, *supra* note 2, at 3.

[4] *Id.*

Lowe's sells both national-brand merchandise and its own private brands, such as "Kobalt," "STAINMASTER," and "allen+roth."[5]

18. Lowe's purchases the goods it sells wholesale from vendors, suppliers, and manufacturers, including, but not limited to, a substantial volume of goods imported from outside the United States, and thereafter resells those goods to consumers through its brick-and-mortar and online stores. Lowe's purchases the goods it sells from vendors, suppliers, and manufacturers, including, but not limited to, a substantial volume of goods imported from outside the United States, and resells them to consumers through its stores and online. Lowe's represents that "[w]henever possible, we purchase directly from manufacturers to provide savings for customers and improve our gross margin."[6] Lowe's owns the inventory it offers for sale and sets the retail prices its customers pay.

19. For the imported goods it sells, Lowe's involvement begins before the goods enter the United States. Lowe's owns and operates more than 120 supply chain facilities, including "import distribution centers."[7] As the IOR, Lowe's signs the customs declaration, takes legal responsibility for compliance, and pays the tariff to U.S. Customs and Border Protection ("CBP"). On information and belief, Lowe's serves as the IOR for a substantial portion of the imported goods it sells, as confirmed by its receipt of IEEPA tariff refunds through the CBP platform available only to "importers of record."[8]

20. Lowe's products are not limited to imported goods. Lowe's also sources, stocks, and sells a substantial volume of consumer goods that originate within the United States and are not subject to the IEEPA tariffs. Lowe's offers these U.S.-sourced goods to consumers in its brick-

---

5 *Id.* at 4.

6 *Id.* at 3.

7 *Id.*

8 Q2 2026 Form 10-Q, *supra* note 1; *see also* Lowe's Quality Assurance Program Requirements (2026), https://www.lowes.com/pdf/qa_req_matrix_import_privatebrand_vendors.pdf (last visited Oct. 29, 2026).

and-mortar and online stores, alongside its imported goods. As with its imported goods, Lowe's owns this inventory and sets the retail prices its customers pay.

21. The IEEPA tariffs increased the costs Lowe's incurred on the imported goods for which it serves as the IOR. On information and belief, rather than absorbing those increased costs or confining them to the imported goods that generated them, Lowe's recovered the tariff costs by raising prices across its product lines, including on U.S.-sourced goods that were never subject to IEEPA tariffs.

22. As a result, Lowe's sold its imported goods at prices inflated by its direct pass-through of IEEPA tariff costs and sold its U.S.-sourced goods at prices likewise inflated by Lowe's decision to spread those same tariff costs across its product lines.

23. Consumers who purchased U.S.-sourced goods from Lowe's therefore bore a portion of the IEEPA tariffs that Lowe's incurred on imported goods those consumers never purchased.

**B. The Trump Administration Invokes the IEEPA to Implement Tariffs**

24. On February 4, 2025, Trump issued an executive order imposing a 10% tariff on Chinese imports. In March 2025, Trump issued two more executive orders imposing a 25% tariff on goods imported from Canada and Mexico. By April 2025, the Trump administration had imposed tariffs on imports from most other U.S. trading partners.

25. The Trump administration invoked the IEEPA as the legal basis for these tariffs. The IEEPA was originally designed to allow the President to regulate international commerce during declared national emergencies. The Trump administration pointed to drug trafficking across U.S. borders and the persistent American trade deficit as the legal emergencies justifying the IEEPA tariffs.

26. The IEEPA tariffs did not operate in isolation. For example, for much of 2025, the effective rate on most Chinese electronics was approximately 45%: a 20% IEEPA layered on top of an already existing 25% Section 301 tariff. At the peak of the escalation in early May 2025, average U.S. tariffs on Chinese imports reached 127.2%.

27. On April 3, 2025, within days of the IEEPA tariffs going into effect, the first lawsuit challenging their legality was filed. Despite palpable fear from business groups of incurring Trump's wrath, other lawsuits would eventually follow. These filings were widely reported, and as a major retailer, Lowe's certainly tracked their progress.

28. On February 20, 2026, the U.S. Supreme Court issued its opinion in *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 254-55 (2026) holding that the IEEPA did not authorize the President to impose the IEEPA tariffs and that they were invalid *ab initio*.

29. The Supreme Court's decision in *Learning Resources* eliminated the legal basis for the IEEPA tariffs and created a pathway for IORs like Lowe's to seek refunds of the tariffs previously collected by the federal government.

### C. Consumers Incurred Price Increases on Lowe's Products While the IEEPA Tariffs Were in Effect

30. The IEEPA tariffs increased the costs that retailers, including Lowe's, incurred on imported goods. Across the retail industry, companies responded by passing those increased costs on to consumers through higher prices. A survey of U.S. Chief Executive Officers found that a majority had already raised prices or were considering doing so in response to the tariffs, and major retailers publicly announced tariff-driven price increases throughout 2025 and into 2026.

31. Independent economic analysis confirms that a substantial portion of the tariff costs was passed through to U.S. consumers during the relevant period. The Federal Reserve found that pass-through to consumers for goods imported from China was at least 30% between April and December 2025. Federal Reserve Bank of New York research found that U.S. businesses and consumers together bore nearly 90% of the cost of the 2025 tariffs.

32. These price increases were not confined to imported goods. Analyses of retail pricing found that prices rose on both imported and domestically produced goods as retailers spread tariff-related costs across their product lines. Researchers estimated that tariff pass-through added roughly 0.7 percentage points to the Consumer Price Index by September 2025, and that the lowest-priced product varieties saw the steepest increases (around 5%) because retailers had the least room to absorb the cost in their margins.

33. The cumulative burden on consumers was enormous. After years of moderating prices, consumer goods prices rose throughout 2025 and into 2026. According to the Budget Lab at Yale University, tariffs accounted for an estimated 86% of the rise in prices for imported household goods, with the effect most pronounced for long-lasting durable goods such as cars, appliances, and furniture. American consumers paid more than $231 billion in tariff costs between February 2025 and January 2026, an average of roughly $1,745 per family.

34. Lowe's product line is not limited to imported goods. Lowe's also sources, stocks, and sells a substantial volume of consumer goods that originate within the United States and are not subject to IEEPA tariffs, which it offers to consumers alongside its imported goods. As with its imported goods, Lowe's owns this inventory and sets the retail prices its customers pay.

35. Lowe's has admitted that it sources, "both directly and indirectly, a portion of the products we sell from foreign manufacturers, with China and Mexico being the dominant import sources," and that "[t]ax and trade policies, tariffs, and other regulations affecting trade between the United States and other countries, such as China and Mexico, increase the cost of our merchandise sourced from outside of the United States, which represents a large percentage of our private branded and national brand merchandise."[9]

36. Lowe's has likewise admitted that the impact of tariffs on its business "will be influenced in part by merchandising and pricing strategies in response to potential cost impacts by us and our competitors."[10] Lowe's further acknowledged that its sales are affected by changes in costs and by "our ability to pass them on to our customers."[11] These statements confirm that Lowe's responded to tariff-driven cost increases through its pricing—that is, by adjusting the prices consumers paid.

37. On information and belief, rather than absorbing the IEEPA tariff costs or confining them to the imported goods that generated them, Lowe's (like other major retailers) made a

---

[9] 2025 Form 10-K, *supra* note 2, at 11.

[10] *Id.*

[11] *Id.* at 16.

business decision to recover the tariff costs by raising prices across its product line, including on U.S.-sourced goods that were never subject to IEEPA tariffs.

38. As a result, Lowe's sold its imported goods at prices inflated by its direct pass-through of IEEPA tariff costs and sold its U.S.-sourced goods at prices likewise inflated by its decision to spread those same tariff costs across its product line. Consumers who purchased U.S.-sourced goods from Lowe's therefore bore a portion of the IEEPA tariffs that Lowe's incurred on imported goods those consumers never purchased.

39. Lowe's has not established, announced, or offered any process by which Plaintiff or any Class member may obtain a refund of the tariff-related overcharges they paid. Lowe's has not invited claims and has not returned any portion of the $80 million of refunded tariffs they have received from CBP, to date.

40. Lowe's maintains detailed transaction, pricing, and customer records, including point-of-sale data, online order histories, and payment and loyalty-program records, through which Lowe's is able to identify the consumers who paid tariff-inflated prices during the Class Period and the amount of the increase attributable to the IEEPA tariffs. Lowe's describes its omnichannel retail network as providing "a single view of the customer, no matter where they place their order, whether in-store, online, on-site, or through the contact center."[12] Lowe's also operates its "MyLowe's Rewards" loyalty program for both Pro and do-it-yourself customers,[13] and accepts payment through, among other methods, its private label and co-branded credit cards.[14] Lowe's deploys these same capabilities for granular assortment and pricing decisions, and can equally deploy them to identify Class members and calculate consumer-level restitution.

41. Plaintiff and Class members paid tariff-inflated prices to Lowe's during the Class Period. Lowe's now seeks to retain the benefit of those consumer payments while also recovering, and keeping for itself, the government's refund of the same tariffs.

---

[12] 2025 Form 10-K, *supra* note 2, at 2.

[13] *Id.* at 1.

[14] *Id.* at 14.

**D. Lowe's Will Receive an Unjust Windfall from IEEPA Tariff Refunds**

42. Following the Supreme Court's decision in *Learning Resources*, nearly 2,000 importers began attempting to recover tariff refunds from the federal government. On March 4, 2026, the CIT ordered refunds of the IEEPA tariffs, holding that "[a]ll importers of record" are "entitled to the benefit" of the Supreme Court ruling that struck down the IEEPA tariffs. The CIT ordered CBP to liquidate any and all unliquidated entries subject to IEEPA tariffs "without regard to the IEEPA duties," and ordered that "[a]ny liquidated entries for which liquidation is not final shall be reliquidated without regard to those duties."[15]

43. The Executive Director of CBP's Trade Programs Directorate estimated that as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA is approximately $166 billion. Given Lowe's size, it is likely entitled to collect hundreds of millions of dollars in refunds on behalf of consumers.

44. Effective April 20, 2026, CBP "launched a platform for importers of record to begin IEEPA tariff refund requests, where eligible."[16] Under CBP's Consolidated Administration and Processing of Entries ("CAPE") process, IEEPA refunds are paid electronically to the filer, and CBP removes the IEEPA duties from each affected entry.[17] Consumers who are not the IOR have no access to this process.

45. Lowe's has used this process for its own benefit. In its Form 10-Q for the quarter ended July 31, 2026, Lowe's disclosed: "The Company is accounting for tariff refunds as a contingent gain in accordance with ASC 450-30. Under this standard, a gain contingency is not recognized until the gain is realized or realizable. During the second quarter of 2026, we

---

[15] Amended Order at 2-3, *Atmus Filtration, Inc. v. United States*, No. 1:26-cv-01259-RKE (U.S. Ct. Int'l Trade Mar. 5, 2026), ECF 29.

[16] Q2 2026 Form 10-Q, *supra* note 1.

[17] U.S. Customs & Border Prot., *International Emergency Economic Powers Act (IEEPA) Duty Refunds*, https://www.cbp.gov/trade/programs-administration/trade-remedies/ieepa-duty-refunds.

recognized approximately $80.0 million of IEEPA tariff refunds in our consolidated statements of earnings. Uncertainties remain regarding the amount and timing of future collections."[18]

46. Lowe's disclosure contains no reference to compensating, refunding, or otherwise returning any portion of these IEEPA duty refunds to the consumers, like Plaintiff, who paid tariff-inflated prices during the Class Period. Lowe's recognized the refunds in its own earnings and disclosed nothing to suggest it would share those recoveries with the consumers who funded them. And because Lowe's expressly anticipates "future collections," its windfall will continue to grow.

47. Lowe's has not established, announced, or offered any process by which Plaintiff or any Class member may obtain a refund of the tariff-related overcharges they paid. Lowe's has not invited claims and has not returned any portion of the IEEPA tariff refunds it has received from CBP.

48. Indeed, at an August 19, 2026, earnings call, Lowe's Chief Financial Officer ("CFO") Brandon Sink ("Sink") said Lowe's anticipated that additional refund benefits would be, "reinvested in customer-facing actions that are going to continue to reinforce our value prop."[19]

49. While collecting these tariff costs from consumers through higher prices, Lowe's has simultaneously recovered a refund of the same IEEPA tariffs from the federal government. To be sure, at the Q2 2026 Earnings Call, Lowe's CFO Sink disclosed that Lowe's recognized an approximately $80 million tariff-refund benefit in the second quarter.[20]

50. If Lowe's retains that refund without compensating the consumers who already bore the tariffs' cost, Lowe's will have recovered the same tariff twice—once from its customers and once from the government—and will be made whole twice over at the Class's expense.

---

[18] Q2 2026 Form 10-Q, *supra* note 1.

[19] *See* Edited Transcript of Q2 2026 Lowe's Companies Inc. Earnings Call at 14 (Aug. 19, 2026) https://corporate.lowes.com/sites/lowes-corp/files/Quaterly-results/low-usq-transcript-2026-08-19.pdf.

[20] *Id.*

51. Despite being well aware of the numerous challenges to the legality of the IEEPA tariffs, Lowe's deceived consumers by failing to inform them that it would not refund duties paid by consumers to cover IEEPA tariffs even if the tariffs were later invalidated.

52. These funds were wrongfully taken from consumers to cover IEEPA tariffs that have since been invalidated.

## V. CLASS ALLEGATIONS

53. Plaintiff brings this action on behalf of himself and as a class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, seeking damages and injunctive relief pursuant to state law on behalf of the members of the following Class:

(a) **Imported Product Class**: All persons who, during the period beginning on February 4, 2025 through February 20, 2026, purchased from Lowe's a good that was itself subject to IEEPA tariffs, at a price that Lowe's increased to pass through the IEEPA tariffs assessed on that good.

(b) **U.S.-Sourced Product Class**: All persons who, during the period beginning on February 4, 2025 through February 20, 2026, purchased from Lowe's a U.S.-sourced good that was not itself subject to IEEPA tariffs, at a price that Lowe's increased to spread, recover, or offset across its product line the IEEPA tariff costs it incurred on its imported goods.

54. Alternatively, Plaintiff seeks certification of the following:

(a) **California Imported Product Class**: All persons who, during the period beginning on February 4, 2025 through February 20, 2026, purchased from Lowe's in the state of California a good that was itself subject to IEEPA tariffs, at a price that Lowe's increased to pass through the IEEPA tariffs assessed on that good.

(b) **California U.S.-Sourced Product Class**: All persons who, during the period beginning on February 4, 2025 through February 20, 2026, purchased from Lowe's in the state of California a U.S.-sourced good that was not itself subject to IEEPA tariffs, at a price that

Lowe's increased to spread, recover, or offset across its product line the IEEPA tariff costs it incurred on its imported goods.[21]

55. Excluded from the Class are Lowe's and its officers, directors, management, employees, subsidiaries, or affiliates. Also excluded are the district judge or magistrate judge to whom this case is assigned, as well as those judges' immediate family members, judicial officers and their personnel, and all governmental entities.

56. The identity of all products encompassed within the Class definition, *i.e.*, Class Products, is readily identifiable from Lowe's records. The identity of Class members and their purchase records are available through multiple sources, including Class members' own transaction and payment records, Lowe's records of Class Product purchases, and records maintained by credit card companies, other financial institutions, and e-commerce payment platforms.

57. **Numerosity.** Members of the Class are so numerous that joinder is impracticable. Plaintiff believes that there are tens of millions of members of the Class (if not more), geographically dispersed throughout the United States, such that joinder of all Class members is impracticable.

58. **Typicality.** Plaintiff's claims are typical of the claims of other Class members. The factual and legal bases of Lowe's liability are the same and resulted in injury to Plaintiff and all other members of the proposed Class.

59. **Adequate Representation.** Plaintiff will represent and protect the interests of the proposed Class both fairly and adequately. He has retained counsel competent and experienced in complex class action litigation. Plaintiff has no interests that are antagonistic to those of the proposed Class, and his interests do not conflict with the interests of the proposed Class members he seeks to represent.

60. **Commonality and Predominance.** Common questions of law and fact predominate over questions that may affect only individual Class members because Lowe's has

---

[21] For ease of reference, each Class defined above is collectively referred to as the "Class."

acted on grounds generally applicable to the Class and because Class members share a common injury. Determining damages on a Class-wide basis is therefore appropriate. The overcharge injuries incurred by Plaintiff and each Class member arose from the same conduct alleged herein.

61. There are common questions of law and fact specific to the Class that predominate over any questions affecting individual members, including:

(a) whether the higher prices that consumers paid for products sold by Lowe's are attributable to the cost of IEEPA tariffs;

(b) whether Lowe's is obligated to return the cost of IEEPA tariffs to the consumers who paid them in the form of higher prices;

(c) whether Lowe's retention of elevated consumer payments constitutes unjust enrichment;

(d) whether Lowe's use of IEEPA tariff-related funds to benefit Lowe's business was unlawful;

(e) whether Lowe's acted unlawfully by upcharging consumers in response to IEEPA tariff-related costs while making statements to the contrary;

(f) whether Lowe's conduct constitutes an unlawful practice under consumer protection statutes by collecting tariff-related surcharges from consumers while misrepresenting its pricing practices and failing to establish a consumer refund mechanism;

(g) whether Lowe's conduct has harmed Plaintiff and the Class uniformly; and

(h) the measure of damages available to Plaintiff and the Class due to increased prices caused by Lowe's IEEPA tariff pass-through.

62. **Prevention of inconsistent or varying adjudications.** Individual prosecution of the claims alleged herein would likely yield inconsistent or varying results, establishing incompatible standards of conduct for Lowe's. Certification of the proposed Class would prevent this outcome.

63. **Injunctive Relief.** By way of its conduct described in this Complaint, Lowe's has acted on grounds that apply generally to the proposed Class. Accordingly, final injunctive relief is appropriate respecting the Class as a whole.

64. **Superiority.** A class action is superior to other available means for the fair and efficient adjudication of the Class's claims. The damages suffered by individual Class members are relatively small compared to the burden of individual prosecution of this complex litigation. Individual lawsuits would risk inconsistent judgments and increase delay and expense for all parties. A class action presents fewer administrative difficulties. Class members are ascertainable through methods typical of class action practice, including Lowe's own records and consumers' proof of purchase.

## VI. CLAIMS FOR RELIEF

### COUNT I

### Violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200 et seq.

65. Plaintiff incorporates by reference all preceding allegations in paragraphs 1 through 64 as though fully set forth herein.

66. Plaintiff brings this Count on behalf of all California Class members.

67. The UCL defines unfair competition to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code §17200.

68. Lowe's conduct is unlawful because it violates, among other laws, the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §75-1.1. Lowe's conduct is further unlawful because it consists of charging and retaining consumer payments to cover tariffs that the Supreme Court has held were never authorized by law.

69. Lowe's conduct is unfair because it offends established public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers. Lowe's shifted the cost of unlawful tariffs onto consumers—including purchasers of goods that were never subject to tariffs—while positioning itself as the only party entitled to recover those same tariffs from the government, and it has now recognized approximately $80 million of IEEPA tariff refunds for its own account. The harm to consumers greatly outweighs any utility of this conduct, and consumers could not reasonably have avoided it.

70. Lowe's conduct is fraudulent because it is likely to deceive members of the public. Lowe's failed to disclose that its prices embedded a pass-through of IEEPA tariff costs and that it would retain any refunds of those tariffs rather than returning them to the consumers who paid them.

71. Plaintiff has suffered injury in fact and has lost money or property as a result of Lowe's unfair competition, within the meaning of Cal. Bus. & Prof. Code §17200, because Plaintiff paid tariff-inflated prices for products purchased from Lowe's.

72. Plaintiff and the Class lack an adequate remedy at law for Lowe's ongoing and future conduct, including its continued retention of current and future IEEPA tariff refunds, and legal remedies would not be as certain, prompt, or efficient as equitable restitution and injunctive relief.

73. Pursuant to Cal. Bus. & Prof. Code §17203, Plaintiff and the Class seek an order enjoining Lowe's from continuing its unfair competition and an order restoring to them any money acquired by means of such unfair competition, including restitution of tariff-related overcharges or a proportionate share of the IEEPA tariff refunds Lowe's has recovered and will recover.

**COUNT II**

**Violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. §75-1.1 et seq.**

74. Plaintiff incorporates by reference all preceding allegations in paragraphs 1 through 64 as though fully set forth herein.

75. Plaintiff brings this Count on behalf of all Class members.

76. The UDTPA declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. §75-1.1(a). Commerce includes "all business activities, however denominated." *Id.* §75-1.1(b).

77. The essential elements of a UDTPA claim are "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Gray v. N. Carolina Ins. Underwriting Ass'n*, 529 S.E.2d 676, 681 (N.C. 2000).

78. Lowe's committed unfair and deceptive acts or practices in violation of the UDTPA by: (a) increasing charges to Plaintiff and the Class that were the result of illegal tariffs and retaining sums gained through illegal collection; (b) unlawfully and unfairly charging customers inflated prices to cover the costs of IEEPA tariffs, including on goods never subject to those tariffs; and (c) failing to disclose to consumers that it did not intend to return any refund of IEEPA tariff payments even if those tariffs were illegal, and instead would retain consumers' funds to pursue its own business interests. This information is material to Plaintiff's purchasing decisions, and if not for Lowe's deceptive and unfair conduct, Plaintiff and the Class would not have purchased products from Lowe's, or would have paid less for them.

79. Lowe's is headquartered in Mooresville, North Carolina, and, on information and belief, the pricing and refund decisions alleged herein were made in, and directed from, North Carolina. Lowe's sale of goods to consumers is a business activity in or affecting commerce.

80. Plaintiff and the Class have been injured by paying more for products sold or shipped by Lowe's than they should have paid, or would have been willing to pay, were it fully disclosed that the IEEPA tariffs were illegal *ab initio*.

81. These considerations are material to Plaintiff and the Class as reasonable consumers. Had Plaintiff and the Class known the IEEPA tariffs were illegal, and Lowe's concomitant increase in prices false and deceptive, they would either have not purchased the products from Lowe's or would have located them elsewhere.

82. Plaintiff and the Class members have been deprived of money or property by Lowe's.

83. There is a causal link between the unfair or deceptive acts complained of and the injuries alleged.

84. Pursuant to N.C. Gen. Stat. §75-16, Plaintiff and the Class are entitled to treble damages, other equitable relief as determined by the Court, and reasonable attorneys' fees pursuant to N.C. Gen. Stat. §75-16.1.

**COUNT III**

**Unjust Enrichment/Quasi-Contract for Restitution and Disgorgement**

85. Plaintiff incorporates by reference all preceding allegations in paragraphs 1 through 64 as though fully set forth herein.

86. Plaintiff brings this Count as a claim for unjust enrichment on behalf of all Class members, and as a claim for quasi-contract for restitution and disgorgement on behalf of all California Class members.

87. Plaintiff and the Class have conferred a benefit upon Lowe's in the form of money paid through tariff-inflated prices on goods during the Class Period.

88. Lowe's received and accepted that benefit and was thereby enriched. Lowe's has retained the benefit conferred by Plaintiff without paying or otherwise compensating Plaintiff for its value.

89. The circumstances surrounding Lowe's receipt and retention of this benefit make it unjust and inequitable for Lowe's to retain it without payment to Plaintiff. Lowe's obtained these funds through price increases on goods subject to unlawful tariffs and has retained the resulting profits.

90. Under principles of equity and good conscience, Lowe's should not be permitted to retain those ill-gotten profits when Lowe's is seeking a refund of the duties it paid.[22]

91. Plaintiff and the Class have no adequate remedy at law.

92. Plaintiff and the Class are entitled to full disgorgement and restitution of any money Lowe's has retained as a result of the unlawful and/or wrongful conduct alleged herein.

93. Lowe's should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds that Lowe's received.

94. A constructive trust should be imposed on all unlawful or inequitable sums received by Lowe's traceable to Plaintiff and Class members.

---

[22] "The elementary rule of restitution is that if you take my money and make money with it, your profit belongs to me." *Nickel v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 290 F.3d 1134, 1138 (9th Cir. 2002) (citing Restatement (First) of Restitution §1 (Am. Law. Inst. 1937)).

**COUNT IV**

**Money Had and Received**

95. Plaintiff incorporates by reference all preceding allegations in paragraphs 1 through 64 as though fully set forth herein.

96. Plaintiff brings this Count on behalf of all Class members.

97. Lowe's received funds from Plaintiff and from each member of the putative Class in the form of an IEEPA tariff surcharge. The Supreme Court has determined that the IEEPA tariffs were unlawful.

98. The funds belonged to Plaintiff and to each member of the putative Class.

99. Lowe's has not returned the funds.

100. Lowe's is indebted to Plaintiff and Class members for a certain sum which Lowe's received and which Plaintiff and Class members are entitled to use of.

101. Under principles of equity and good conscience, Lowe's should not be permitted to retain those ill-gotten funds. Plaintiff seeks the return of the funds in an amount to be proven at trial.

102. Plaintiff seeks all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to them.

103. Lowe's should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds that Lowe's received.

104. A constructive trust should be imposed on all unlawful or inequitable sums received by Lowe's traceable to Plaintiff and Class members.

**VII. REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, respectfully requests that the Court enter judgment in their favor and against Lowe's, as follows:

A. Certification of the proposed Class, including appointment of Plaintiff's counsel as Class Counsel;

B. An Order temporarily and permanently enjoining Lowe's from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged herein;

C. Declaratory relief that Lowe's must return to Plaintiff and the proposed Class all funds paid by consumers to cover an IEEPA tariff surcharge, with interest;

D. Restitution and disgorgement in an amount to be determined at trial;

E. Damages, including treble, statutory, punitive, and nominal damages, in an amount to be determined at trial;

F. An Order requiring Lowe's to pay both pre- and post-judgment interest on any amounts awarded;

G. An award of costs and attorneys' fees; and

H. Such other or further relief as may be appropriate.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: November 2, 2026

ROBBINS GELLER RUDMAN
& DOWD LLP
ERIC I. NIEHAUS (239023)

s/ Eric I. Niehaus
ERIC I. NIEHAUS

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
ericn@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
STUART A. DAVIDSON (*pro hac vice* forthcoming)
MICHAL-ANE E. MCINTOSH (*pro hac vice* forthcoming)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: 561/750-3000
sdavidson@rgrdlaw.com
mmcintosh@rgrdlaw.com

Attorneys for Plaintiff and the Class